I'm just going to get rid of this. All right. We'll do one more and then we'll take a break. This is 19-2188 United States v. Troup. Mr. Carlson, you may proceed when you are ready. Good morning, Your Honors, and may it please the Court, Ms. Messick. I'm John Carlson here on behalf of Edward Troup, who was convicted on two counts of Vicar murder. Apologies, Judge McHugh, that's my, I'm in the habit of calling it Vicar. Forgive me. I don't know which is right. I don't either. One of Mr. Troup's counts of convictions involved a homicide that took 14 years before the indictment, the other eight years. I give you these intervals of time because I want to discuss Mr. Troup's statute of limitations argument, the very first argument outlined in his opening brief. Let's start where I want you to end up. I'm asking you to reverse Mr. Troup's convictions on one of two grounds. Either his statute of limitations defense was a substantive defense rather than a mere procedural one, and as such, as a substantive offense, it was incorporated into Vicar. Alternatively, I'm asking you to reverse his conviction because Vicar is state court defenses, it incorporates, and by operation of the rule of lenity, therefore, Mr. Troup's limitations defense is incorporated into Vicar. Now let me trace the steps that get us there. At the instructional conference, obliged to Article 31 of a state court murder, the prosecutors asked for what they called a step-down instruction. That is, they asked the jury to be permitted to return a conviction if it found Mr. Troup guilty, again that word, return a verdict of guilty on either first degree or second degree murder under New Mexico law. Mr. Troup objected. He said, you cannot find me guilty of second degree murder. I have a complete legal defense. The applicable six year statute of limitations expired before I was indicted. Judge Browning rejected this decision, not because he disagreed with Mr. Troup's understanding of state law. Judge Browning rejected Mr. Troup's position because Judge Browning called his limitations defense a mere procedural defense, not a substantive one, and therefore, as a procedural defense, it was excluded from Vicar. Now let's put to the side for just a moment the instability or precarity of the substance procedure distinction, and put to the side with it a rule of lenity argument. I want to take Judge Browning's ruling on its own terms, and I take that ruling quite seriously, not least because the government defends it, but also because it represents the one common ground that all the players share. We all agree, if Mr. Troup's limitations defense was substantive, Instruction 31 was erroneous. So now the question is twofold. Was Judge Browning correct in labeling Mr. Troup's limitations defense procedural rather than substantive? More fundamentally, how do we decide if he was correct? Which is to say, how do you, a federal court facing a federal statute with a predicate state court crime, decide whether a state limitations defense is substantive or procedural? Those are cognitively, conceptually difficult questions, I grant you, but this court has answered them both over 25 years ago in Lujan versus the Regents of the University of California. Lujan said two important things. First of all, it said statutes of limitations are neither purely substantive or purely procedural in nature. They draw from aspects of both, and the label depends on the context. So would you agree that just because the government doesn't prosecute someone within the limitations period, it doesn't mean that they didn't commit a murder? Well, I mean, it may mean you can't convict them of a murder, or that you can't try them for murder, or that you can't incarcerate them for murder, but does it mean that they haven't committed one? Well, with due respect, it's an irrelevant question, Your Honor. The question is, can this, could this jury have returned a verdict of guilty, which is what Instruction 31 says, given of an uncontested, complete legal defense? So let me, let me, let's read the statute here. It says, and I cut out a few words so we don't take all of your time reading it, whoever for the purpose of gaining entrance to or maintaining or increasing position in an enterprise engaged in racketeering activity, murders in violation of the laws of any state or the United States, or attempts or conspires to do so, shall be punished for murder by death or life imprisonment. It doesn't say whoever's been convicted of murder, whoever was prosecuted within the statute of limitations and convicted of murder. No, Your Honor. It says in violation of the laws of any state, which brings us back to Lujan. It would still be in violation of the law if you committed the act. You might have a defense. Your Honor, this jury wasn't asked whether it was in violation of the law. This jury was asked to return a verdict of second-degree murder, and if it could not, it must acquit. And Lujan said, you must defer to the state's own characterizations of its limitations laws. Okay, so let me, so you're grafting onto, in addition to committing the elements of murder, you're grafting on the idea that in this instance they also had to prove that the jury was properly instructed. I graft nothing, Your Honor. I read jury instruction 31, and several times it tells the jurors that they must return a verdict of either first-degree murder or second-degree murder. Does it say anything about the time, did it place before the jury the idea that the murder had to occur within X number of years? It could have and should have if the jury was properly instructed, and there was a factual dispute, because ultimately a statute of limitations defense, believe it or not, can boil down to a factual matter for the jury to decide. Say if the defendant said the murder occurred in November and the prosecution thought, no, it's December, which is inside, that's a jury question. We're not shaving it that close in this case. No, this is, because, to your point, Your Honor, this was uncontested. Mr. Troup wins if that defense is incorporated, and he points to New Mexico Supreme Court case laws since 2008 that have called criminal statutes of limitations under New Mexico law substantive, substantive. They, the protections they grant are substantive in nature, not procedural. On the ground, on that ground alone, Lujan points to reversal. Would the majority of federal courts, though, conclude that criminal statutes of limitation are procedural? And I know it looks like we're getting into a little bit of a metaphysical discussion here, but wouldn't the consensus on the federal side be, well, these are procedural because their purpose and intent is staleness of evidence, et cetera, et cetera, not the particular elements of the state law crime? I don't agree, Your Honor, and I'm going to, once again, wrap myself around the axle of Lujan. This court told us that it depends on the context, and there are lengthy string sites, parenthetical sites, offering limitations, explaining that limitation defenses are procedural for purposes of retroactivity analysis, yet substantive for Erie doctrine. Again, getting to the point, confusion reigns. What does a federal court do? Lujan instructs, accept the state court's own description, and we have that here in State v. Kirby, which is all over my briefs and Ms. Messick's as well. In the RICO context, the circuits have rejected this argument, the ones that have considered it, and said that the purpose was to borrow conduct, only the state law that describes the conduct that is a predicate act under RICO. Shouldn't we do the same thing here? No, for a couple of reasons. First, those are RICO statutes with slightly different language, more to the point, much- Slightly different. Inchargeable under, violation of, and I think Ms. Messick makes a fair point about the collapsing the difference, and so that's not where I'm headed. I think another point is much of that case law, if you look at it, is either dicta or to be blood old. It took place when statutory construction was a different animal. It was before we all became textualists. I don't agree with those cases, and if I were appointed on a RICO case to this court today, I would make the same argument. I would say focus on the text of RICO. There may be sensible distinctions to be made. You've offered one of them, and it's no surprise that two extraordinarily sensible people have landed on them, Judge Browning and Ms. Messick. Make your point. This is really about conduct, and I don't agree, Your Honor. That is a gloss, an embroidery on the statutory text. Nowhere in Section 59 would you see even a whisper of a conduct versus non-conduct distinction. We're stuck with the law Congress gave us. Unless there are questions, I'm going to stay with my reply. Thank you, Counsel. May it please the Court. Paige Messick again for the United States. I disagree with Mr. Carlson. Vicar's text is clear, and it only grabs the substance of state laws. You don't murder someone in violation of a state's procedural laws. The court could stop there. I know that's a very short textual argument, but that's it. You simply don't commit these substantive crimes in violation of the state's procedural laws. There's no ambiguity on the face of this statute. But if the court seeks additional reassurance, it could proceed to look at the case law in this and the other circuits. And the courts of appeals across the array of racketeering statutes have held that these statutes incorporate state law to define the prohibited conduct, not to bring in their rules of evidence and statutes, in relation to statutes of limitation. Congress is presumed— Isn't it a fair point that now that we are all textualists, that we don't try to divine the purpose that Congress had when we look at the plain language of the statute? So should we limit ourselves to the language here and try to figure out what it says? That would be fine, because my argument is that this statute on its face is clear, that this isn't an ambiguous statute. It says, murders in violation of the state laws. The we're all textualists argument is— And the argument is in violation of state laws and punishable by the state, I guess, is the argument. That it may be in violation, as my colleague pointed out, you're still in violation, you've murdered, but they can't prosecute you because the statute has run. And where you have the state Supreme Court saying that is a substantive concern, does that affect how we then look at it for purposes of a predicate act under Vicar or Vicar? I've been of the Vicar camp, but I could be wrong. But no, I think there were a lot of questions. I'll start with the last one, with whether the state's construction of a statute of limitations, as substantive or procedural, has any bearing here. And it does not, because what Vicar incorporates is a federal question. Federal courts draw that line, and you can call it the line between substance and procedure, or you can call it the line between defining conduct and everything else. But federal courts draw that line. And the federal court, this court in Lujan, drew that line. And then you look to the state to see which side of the line does it fall on. So it really doesn't matter whether New Mexico calls the statute of limitations procedural or substantive. It's a statute of limitations, and we know what that is, and it has been treated consistently in all of the federal cases. I was surprised to hear the we're all textualist argument here under this specific argument, because the government's argument here is that this statute is clear, and it is Mr. Carlson's position, as I understand it, that is ambiguous. And so he can't be resorting merely to the text to defend his position. He needs to draw in other things. The government's not relying on anything other than text. It doesn't necessarily rely on anything other than the text. But we do look to all of the cases interpreting the same suite of statutes and to the incredibly consistent conclusion that they have all come to, that we're only looking at state laws that define the prohibited conduct. Mr. Troop says that it is nonsense on stilts to draw in some state law defenses and not others, but it's not as if which are drawn in and which aren't is totally random. They fall along this clean line. The defenses that mean you didn't violate the law, you didn't engage in conduct that constitutes as offense, those defenses apply, like self-defense, duress, anything relating to an element of the crime. What if New Mexico had a rule of evidence that you cannot, evidence of conduct that's more than six years old is inadmissible in a murder trial? And the reason for that is that we can't have confidence that stale evidence would support a conviction for this particular conduct. Is that substantive or is that procedural? I think that that's still procedural. It's saying which evidence is admissible to prove that someone did or did not engage in the prohibited conduct, that they did complete the elements of the crime or not. Now, if you are limiting the evidence that comes... That's prophylactic, too, because we can't have confidence in the conviction because of the staleness of the evidence. That seems like more of a substantive judgment by the legislature than a procedural judgment. I think the states make lots of judgments that are procedural, but that have some substance to them. For instance, a law of suppression, for instance. New Mexico might say you can't introduce any of this evidence to prove murder, but that doesn't go to defining the elements of murder. That would still be considered a rule of criminal procedure, even though we know that it's a very substantive rule of procedure. It's still talking about what evidence can come in to prove the conduct. So I still think that even if there were such a rule in New Mexico... Those fall on the procedural line, and that's that. That's right, and it's been a pretty clear line for all of the courts of appeals that have looked at this similar question, or even the exact statute of limitations question in the context of other racketeering statutes. So, the statute that discusses second-degree murder in New Mexico does not also... Discuss limitations. It does not. There's a separate statute that discusses limitations, right? Yes. And you would agree that if someone's going to be prosecuted for murder in state court, that certainly both of those statutes apply to that prosecution? Yes. Does that make a difference here? Are these... I guess what I'm saying is, we've been focusing on what's murder, but do we have to use a term that was strongly disagreed with by your opposing counsel? Do we have to graft the other statute onto the murder statute to determine what we're really dealing with here? No, you don't. I mean, I think in all of these cases, we can assume that whatever relevant law, state law, procedure, or evidence would apply and would govern that prosecution in state court, but that doesn't mean that we pull all of those into a federal prosecution. I mean, that would be, aside from, I believe, contradicted by the language of the statute, completely unworkable. Now the federal court has to apply state laws of procedure, state laws of speedy trial, state laws of discovery, state laws of suppression, who knows what else? But the fact that those things would apply and could, in fact, be dispositive in the state case doesn't have any impact on whether they are pulled into a federal statute here. I would also make a point regarding harmlessness. So even if the court agrees that the state statute of limitations meant that the jury could not convict on a theory of second degree murder, that error would be harmless in this case. And a harmless error review is most certainly available, because in Hedgepeth and later in Skilling, the Supreme Court, in reviewing an invalid ground kind of challenge to jury instructions, said that courts are to do the same thing they do in all other cases of Roni's jury instructions, and that is to ask whether the flaw in the instructions had a substantial and injurious effect or influence in determining the verdict. And that means a court can ask if there was overwhelming evidence on the valid ground of instruction. And in fact, the court in Hedgepeth said it would be patently illogical to do otherwise, because you're essentially treating the fact of a valid ground as making the case in a poorer posture than when you have only one erroneous ground. What do we do about United States v. Hawley? Well, I think that the court has to depart from the rule in Hawley, and the court is able to do that here, because the rule in Hawley is flatly inconsistent with the rule that the Supreme Court adopted in Hedgepeth and in Skilling. And contrary to the contention in Troup's brief, Mackay, this court's case in which Judge Briscoe concurred but said we may have a problem here, that case is no barrier to this court in this case setting its case law right. Because in Mackay, there were two theories, and one of them was invalid, but the government didn't ask the court to affirm on the valid ground. And it didn't ask the court to say that Hawley and Holland were inconsistent with Hedgepeth. So Mackay doesn't set in stone the court's law on this. The government here is asking you to affirm, if you need to, on that alternative ground, and we are asking you to bring the court's law in line with the Supreme Court. Thank you. Mr. Carlson strongly relies on Lujan, and there is support for his position in that case. What's your primary line of attack on that precedent? My primary line of attack, I think, is that the New Mexico wrongful death statute that was at issue there, the statute of limitations was essentially an element of that statute because not having existed at common law, that statute was, well, that cause of action was a creation of statute, and so the statute of limitations was an essential part of it. So actually, in Lujan, that distinction is very consistent with what the government is arguing here. And I would also argue that in Lujan, the court first drew the line between substance and procedure. First it said, we're going to talk about what substance and procedure mean, there's not necessarily a clear line, usually statutes of limitation are on the procedural line, but sometimes if they actually limit the cause of action itself, then they may be treated as substantive. Having laid that groundwork and laid the line essentially by itself, then it goes to New Mexico case law to see where New Mexico falls on each side, whether it falls on each side of the line. So I think Lujan is actually entirely consistent, in fact, supports the government's reading here. If there aren't any further questions, I would like to use just a minute to touch on the Jaramillo issue. I know that Mr. Carlson didn't address it, but since I don't get a Sir reply brief, I wanted to set the record straight on at least one point. On the DNA evidence, Truth's reply brief alternates between implying that the government did know that Jaramillo's DNA was on that ligature, and blaming the government for being negligent for not knowing that it was there. And those two things cannot both be true, and in fact, in this case, neither of them is true. Because the case agent testified that he reviewed that DNA report, and that Jaramillo was ruled out in that report as a contributor to that DNA. He was then confronted on cross-examination by a defense attorney who showed him one page of the underlying data that was underneath this DNA report. And that page evidently had a notation that said that there were indications of Jaramillo's DNA on this court. But it is entirely reasonable for the case agent to rely on the DNA report and not go digging around in the underlying data. The person who got an F in DNA analysis is not the case agent. It's the person that wrote that report. So even though the government's position is that we don't have to show diligence in discovering the substance of Jaramillo's testimony, because substance is not required to be disclosed under 3432, we strenuously disagree with the defense's characterizations of that diligence or lack thereof. I see that I'm almost out of time. Let me start with Lujan and the notion that the distinction there is that the wrongful death limitations period was effectively an element of the offense. I suggest the same thing would be true here had this jury been correctly instructed and there was a contested factual question about the applicability of the statute of limitations. Then the absence of a valid defense under the limitations law would be an element of defense. Two, let me take a stab at workable rules. I think Ms. Messick raises a fair point. Here's the rule I suggest. Evidentiary rules are out. So too are non-case dispositive procedural rules. So if New Mexico had a rule requiring 12-point font and you have a 14-point font rule, that's not case dispositive. It's not incorporated into VIKR. Here's my rule, and I want you to adopt it. If the defense disposes of the ability of the jury to find Mr. Troop guilty of second-degree murder, then it's incorporated, full stop. It matters not whether it's substantive or procedural, conduct or non-conduct. If it's case dispositive, it's incorporated. Secondly, harm, or third harm, let's just get our sequence correct. Pulido, Skilling, then Mackay. Pulido and Skilling effected no change in this court's law. This court, before Pulido, had long held this is, so-called alternative theory error is subject to harmless error review. The Ninth Circuit in Pulido said, no, it's structural. Well, that was wrong. But this court had never made that mistake. So Hawley remains good law. Mackay, which postdates Pulido, reifies that law, and it stands for two propositions. If there is alternative theory error, there's only two ways to call it harmless. You either have to be able to determine that the jury rested on a valid ground, valid theory, you can't hear because of the general verdict, or you have to be able, the government has to point to findings by the jury that necessarily reflect it may have rested on the valid ground. That's not present here. In 11 seconds, I make no allegation that Agent Acey deliberately misrepresented his knowledge of the DNA. He was negligent. You can respond on the Jaramillo testimony if you'd like. I think I did. My argument is Agent Acey and the prosecutors were negligent, lack of diligence. They should have looked at the underlying data, because it said Mr. Jaramillo's, indications of Mr. Jaramillo's DNA were on the murder weapon. That makes Mr. Jaramillo a witness, yet it was 17 years later before they sent the first agent to speak in. Thank you. Thank you, Mr. Carlson. I appreciate your excuse. The case is submitted. The court will take a brief recess and we'll reconvene and finish with the next two. Thank you.